961 F.2d 1565
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Terasa CANALES-RIVERA, Plaintiff, Appellant,
v.
SECRETARY of HEALTH and HUMAN SERVICES, Defendant, Appellee.
 No. 91-2099.
 United States Court of Appeals,
First Circuit.
 May 12, 1992
 
 Appeal from the United States District COurt for the District of Puerto Rico
 Raymond Rivera Esteves and Juan A. Hernandez Rivera, on brief for appellant.
 Daniel F. Lopez Romo, United States Attorney, Jose Vazquez Garcia, Assistant United States Attorney, and Paul Germanotta, Assistant Regional Counsel, Department of Health & Human Services, on brief for appellee.
 D.P.R.
 AFFIRMED
 Before Breyer, Chief Judge, Campbell, Senior Circuit Judge, and Cyr, Circuit Judge.
 Per Curiam.
 
 
 1
 Teresa Canales Rivera has appealed from the Secretary of Health and Human Services' decision to deny her Social Security disability benefits. Ms. Canales was born in 1942. She has a twelfth-grade education, and for several years worked for a pharmaceutical company, both as a "granulator machine operator," a job that required heavy exertion, and in the "packing area," a job that required only light exertion.
 
 
 2
 Ms. Canales first applied for disability benefits in March 1987. She alleged that she suffered from an upper respiratory allergy that had prevented her from working since September 1986. She pursued this claim unsuccessfully through several administrative levels, but eventually abandoned it and withdrew her application. Her earnings record shows that she worked for at least short periods in 1987 and 1988, but not since.
 
 
 3
 Ms. Canales filed a second application for disability benefits in November 1989. In addition to her respiratory problems, she now alleged that she suffered from a back impairment brought on by a fall in late 1986.
 
 
 4
 The Administrative Law Judge (ALJ) who eventually heard Ms. Canales' claim ruled that she was not disabled at step five of the "sequential analysis" prescribed by the Secretary's regulations. 20 C.F.R. § 404.1520. That is, he found (1) that Ms. Canales was not working, (2) that she suffered from a "severe impairment or combination of impairments," (3) that the impairments, however, did not "meet or equal" in severity any of the automatically disabling impairments listed in Appendix 1 of the Secretary's regulations, (4) that she could no longer perform her past work, but (5) that other work which she was capable of doing existed in adequate numbers in the national economy.
 
 
 5
 The ALJ was aided in his analysis at steps four and five by the testimony of a vocational expert to whom the ALJ put a series of three "hypothetical" questions. First, the ALJ asked the vocational expert to describe the jobs, if any, available to a person who was Ms. Canales' age and shared her educational and work background, who had the ability to perform "light" work as that term is defined in the Secretary's regulations, 20 C.F.R. § 404.1567(b), and who because of her allergies could not work in situations where she would be exposed to environmental contaminants or extremes of temperature and humidity. The vocational expert said that such a person could not do Ms. Canales' past jobs in the pharmaceutical industry, but could perform other jobs such as a "garment folder" or "thread cutter" in the textile industry. Based on the vocational expert's answer to this question, the ALJ ultimately concluded that Ms. Canales was not disabled.[1]
 
 
 6
 We review the Secretary's disability decision under a "substantial evidence" standard, looking to see whether the decision is bolstered by "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where, as in this case, the source of the ALJ's judgment is a vocational expert's answer to a hypothetical question, we must examine the soundness of the question's premises. If the premises are borne out by the record, then the vocational expert's response constitutes substantial evidence for the ALJ's determination of no disability. Cf. O'Leary v. Schweiker, 710 F.2d 1334, 1343 (8th Cir. 1983) (where premises lack record support, vocational expert's response is not substantial evidence).
 
 
 7
 The premises of the ALJ's operative question here had an adequate evidentiary basis. His description of Ms. Canales' age, education and work skills is not disputed. By asking the vocational expert to eliminate any jobs involving contact with "smoke emanations, gas ... particles, strong odors," or marked changes in temperature or humidity, the ALJ also adequately accounted for the limitations imposed by Ms. Canales' allergies, which according to the medical record did not significantly limit her respiratory functions but did restrict her ability to work at jobs that might expose her to environmental contaminants.
 
 
 8
 Finally, substantial evidence supported the ALJ's decision to fix Ms. Canales' "residual functional capacity" (RFC) at the exertional level of "light" work. First, although respiratory problems may, in some cases, restrict an individual's exertional abilities, see Social Security Ruling 83-14, Ms. Canales' allergies did not do so-a test of her pulmonary capacity, conducted in 1987, showed, as the ALJ noted, "normal results," which led a consulting internist to conclude that the allergies were not severe "from a respiratory standpoint." Rather, the allergies created a purely "non-exertional" impairment that restricted Ms. Canales' ability to work at jobs that might expose her to environmental contaminants but that did not weaken her physically. Thus, the vocational expert testified that Ms. Canales could no longer perform her past work in the packing area because the job involved contact with "emanations" of dust and detergents used to clean the equipment, but the ALJ properly did not suggest that Ms. Canales was unfit to return to the job because her allergies had weakened her to a point where she could not perform the "light" activities required for work in the packing area.
 
 
 9
 Of course, Ms. Canales also alleged the existence of an exertional impairment-the back condition caused by a fall in 1986. The ALJ acknowledged this allegation, and even included the back problem, along with the allergies, in his list of the "combination of impairments ... amounting to severity" that carried Ms. Canales over the second step of the sequential analysis.
 
 
 10
 However, the fact that the ALJ included the back problem as one of the "combination" of impairments "amounting to severity" does not mean that he considered the back impairment, in and of itself, to be "severe." Both the Social Security statute, 42 U.S.C. § 423(d)(2)(C), and the Secretary's regulations, 20 C.F.R. § 404.1523, require the Secretary to "consider the combined effect of all the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." The ALJ, in other words, was required to take into account all of Ms. Canales' alleged impairments, regardless of whether he considered any given impairment to be severe.
 
 
 11
 And it does not appear that the ALJ gave any credit to Ms. Canales' allegations of a severe back impairment. To the contrary, the ALJ's discussion of Ms. Canales' allegations of back pain reveals considerable doubt about the very existence of a back problem. Specifically, the ALJ found that (1) "the objective clinical findings in file did not corroborate the presence of an organic pathology that can reasonably explain the degree of pain the claimant alleges," (2) "there is no radiological evidence to support her allegations," (3) the "progress notes from the main treating source did not show any significant abnormality from the neurological point of view," and (4) "[t]he consulting neurologist did not find any motor or sensory deficits." We take these findings to express the ALJ's conclusion that, at the very least, the alleged back problem did not in and of itself cause a severe impairment.[2]
 
 
 12
 These findings, moreover, are supported by the record, which contains (1) a report of a spinal X-ray, dated 1986, showing normal results, and (2) reports of three neurological examinations (two made in 1987, the third in 1990), which variously report no motor or sensory deficits, "no objective evidence of neurological deficit," no muscle atrophy or abnormality, and no signs of nerve damage. It is true that one of these doctors diagnosed "cervicolumbar painful syndrome," and that another diagnosed "post-traumatic, painful sacrolumbar syndrome," but in light of the uniformly negative test results obtained by these same two doctors, the labels they affixed to Ms. Canales' complaints can be read to say nothing more than that, as the third doctor put it, "she refers mild lower back pain." We have, in similar circumstances, affirmed an ALJ's conclusion that a claimant's alleged back impairment was not severe. See Gonzalez Garcia v. Secretary of Health and Human Services, 835 F.2d 1, 2-3 (1st Cir. 1987) (per curiam) (back impairment not severe where doctors diagnosed chronic cervical syndrome, chronic lumbar myositis and cervical sprain, but obtained mostly negative test results and found no significant limitations of motion).
 
 
 13
 Had Ms. Canales claimed to suffer from only a back impairment, therefore, the ALJ might well have been justified in denying her benefits at the second step of the sequential analysis. See 20 C.F.R. § 404.1520(c) (claimant not disabled if she does not suffer from a severe impairment). Because she suffered from another, demonstrably severe, impairment, however, the ALJ was constrained to proceed with the sequential analysis, considering at all times the combined effect of the non-severe back ailment and the severe allergic condition. 20 C.F.R. § 404.1523 ("If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process"). He did so, and at length reached the fourth and fifth steps in the sequential analysis, where it became necessary to calculate Ms. Canales' remaining exertional capacity. As we have already noted, the allergic condition-a purely non-exertional impairment-had no apparent effect on that capacity. And the alleged back impairment, though ostensibly exertional, had already been properly deemed "non-severe," that is, to have no significant effect on Ms. Canales' ability to perform basic work activities.
 
 
 14
 Thus, there is nothing in the record to suggest that Ms. Canales' alleged or established ailments imposed any limitation on her functional capacity. It appears that the ALJ fixed Ms. Canales' RFC at the light exertional level because she had performed light work (as well as heavy work) in the past. Under the circumstances, this was a reasonable analysis. Given Ms. Canales' failure to demonstrate the existence of an exertional impairment, and the fact that she had performed both light and heavy work in the past, the ALJ could properly conclude that she remained capable of performing at the level of exertion required by the less physically demanding of her two former jobs.[3] The record therefore supported the premise that the ALJ included in his questions to the vocational expert, and the vocational expert's response constituted substantial evidence for the ALJ's ultimate decision to deny Ms. Canales disability benefits.
 
 
 15
 Affirmed.
 
 
 
 [1]
 The second hypothetical question posited a claimant who was in "strong, steady" pain; the third a claimant who suffered from anxiety and was dizzy all the time. According to the vocational expert, neither of these claimants would be able to work at Ms. Canales' past job or at any other job available to a person with her occupational abilities and limitations. The ALJ did not use the vocational expert's responses to these twoquestions because, after obtaining a reasonably full description of the alleged symptoms, he decided that Ms. Canales did not suffer from the kind of pain, anxiety or dizziness she described. We can find no fault with this aspect of the ALJ's reasoning. See Avery v. Secretary of Health and Human Services, 797 F.2d 19, 23 (1st Cir. 1986) (setting standard for evaluating allegations of pain)
 
 
 [2]
 Under the Secretary's regulations, an impairment is not severe "if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities" such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling. 20 C.F.R. § 404.1521(a) and (b)(1). See also Social Security Ruling 85-28 (impairment not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work"). If an ALJ finds that the claimant has failed to demonstrate even the existence of an alleged impairment, as appears to have happened here, then it follows logically that the ALJ does not consider the alleged impairment to be severe
 
 
 [3]
 We express no opinion about whether the ALJ could have concluded on this record that Ms. Canales had the residual functional capacity for heavy work. It is one thing to say that a claimant who has performed at two levels of exertion in the past, and who has failed to demonstrate the existence of a severe exertional impairment, retains the capacity to perform at the less physically demanding exertional level. Depending on the nature of the non-severe impairment and the physical requirements of the past work, however, it may be quite another thing to say that the claimant, despite a non-severe exertional impairment, can still perform at the more demanding level ofactivity. Similarly, we note that in determining whether the claimant can return to her past work, the ALJ must stay alert for evidence of any "unique features" of that work which might be affected by even a non-severe impairment. For example, in McDonald v. Secretary of Health and Human Services, 795 F.2d 1118, 1125 n. 7 (1st Cir. 1986), we gave the illustration of the loss of a fingertip, which might not be a severe impairment for most people, but could render a professional pianist unable to do her past work