USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT [NOT FOR PUBLICATION] ___________________ No. 94-1345 FLORENCE A. EDWARDS, Plaintiff, Appellant, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Paul J. Barbadoro, U.S. District Judge] ___________________ ___________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ ___________________ Raymond J. Kelly on brief for appellant. ________________ Paul M. Gagnon, United States Attorney, Patrick M. Walsh, ________________ __________________ Assistant United States Attorney, and Robert M. Peckrill, ____________________ Assistant Regional Counsel, Department of Health & Human Services, on brief for appellee. __________________ September 2, 1994 __________________ Per Curiam. Claimant Florence Edwards appeals a __________ district court order affirming a decision of the Secretary of Health and Human Services that denies social security disability benefits. We affirm. The background facts are thoroughly detailed in the decisions below. Briefly, claimant alleges a disability due to injuries she sustained on February 28, 1988, when she jumped from a second story window to escape a fire. She suffered significant fractures to both feet and a fractured vertebrae. After a month in the hospital and physical therapy on an outpatient basis, she returned to her work at a shoe company in September, 1988. Adjustments were made in her work duties to accommodate her new mobility limitations, and she remained at her job until the plant closed in December, 1988. For a period thereafter she accepted unemployment benefits. In April, 1989 she underwent a subtalor fusion of the left foot. At the time the treating orthopedist noted that as a result of her fractures her feet were significantly deformed, with residual arthritis. In July, 1990, a similar subtalor fusion was performed on her right foot. It is not disputed that claimant relies on a cane, walks with difficulty, and apparently suffers permanent limitations on her ambulatory abilities. She also suffers from hypertension and obesity, and complains of chronic lower back pain. -2- There were two hearings before an Administrative Law Judge (ALJ) on claimant's application for disability benefits. Claimant was represented by the same counsel at both hearings. A decision denying benefits after the first hearing was vacated by the Appeals Council, and the matter remanded to the ALJ for the taking of additional evidence relating to claimant's post- operative condition. The second hearing also resulted in a decision to deny benefits, and the Appeals Council denied review. On cross-motions by the parties, the district court affirmed the Secretary's decision in a lengthy memorandum opinion. The ALJ's second decision found claimant not disabled at step five of the familiar sequential analytic process, in that claimant had a residual functional capacity to perform a limited range of unskilled sedentary jobs which exist in significant numbers in the national economy. 20 C.F.R. 404.1520(f), 404.1561, 404.1566. Claimant renews in this court several of the multiple assignments of error she urged below, and attempts to add a new one for the first time on appeal. First claimant argues, as below, that the ALJ failed to develop an adequate record relating to her residual functional capacity, because he violated an "explicit order from the Appeals Council to have the examining physician [Dr. Shea] complete a specific form. . . " According to claimant, Dr. Shea should have filled out -3- the very same preprinted form that was used by claimant's treating doctor, Dr. Wachs. Claimant's reading of the Appeals Council's order is questionable,1 but we need not tarry over this detail because the record developed below is clearly adequate. The ALJ had before him a thorough residual functional assessment from Dr. Wachs, who was associated with claimant's treating orthopedist. In addition, there was a full consultative examination by Dr. Shea, who was also familiar with the claimant, having evaluated her in connection with previous applications. Dr. Shea's report contains detailed assessments of appellant's range of motion, reflexes, flexion, walking, sitting, and standing abilities. Both doctors reported substantial limitations on claimant's functional abilities, reducing the range of work which she might perform to less than the full range of sedentary jobs available. It is true that the two doctors' reports are in different formats, but we fail to see any prejudice in this ____________________ 1. The Appeals Council instructed the ALJ to obtain, with the cooperation of claimant's attorney, medical evidence relating to claimant's post-operative condition, [F]rom the claimant's treating sources . . . a medical assessment of the claimant's ability to perform work-related activities (20 CFR 404.1513 and 416.913). Further the [ALJ] will obtain an orthopedic consultative examination with a medical assessment in order to resolve the [severity of claimant's limitations]. -4- asymmetry. Each report formed the basis of a separate hypothetical question propounded to the vocational expert (VE). The VE identified approximately 67,500 jobs in the national economy which claimant might perform despite the functional limitations reported by Dr. Wachs, and 135,000 jobs despite the limitations observed by Dr. Shea.2 Even the lower of these two estimates sufficed to satisfy the Secretary's burden of showing "significant numbers" of suitable jobs in the national economy. 20 C.F.R. 404.1566; see also Keating v. Secretary of HHS, 848 F.2d 271, 276 (1st _________ _______ ________________ Cir. 1988) (to show that work exists in significant numbers, the Secretary must show significant, not isolated, numbers of jobs which a claimant can perform).3 ____________________ 2. The numbers in the text are the adjusted totals computed by the ALJ. The ALJ adjusted the VE's raw figures downward using percentage decreases which the VE had said would account for claimant's various limitations. Our own reading of the transcript suggests that the ALJ's adjusted figure may be lower than the VE intended, as we glimpse the possibility of a double deduction, but since any mistake is in claimant's favor, we need not explore the matter further. 3. While claimant urges that the meaning of "significant numbers" varies with the facts of each case, she points to nothing that might diminish the significance of the very high numbers in her case. Her claim that her disability prevents her from driving is somewhat contradicted by her own testimony, and her alternate contention that there is little public transportation is irrelevant. See Lopez-Diaz v. ___ __________ Secretary of HEW, 585 F.2d 1137, 1140-42 (1st Cir. 1978). We ________________ also do not consider claimant's contentions relating to the "significance" of the smaller numbers given by the VE in response to hypotheticals which were based on the claimant's subjective complaints, because the VE found those complaints not credible. -5- Since the ALJ's conclusion finds substantial support in the treating doctor's, Dr. Wach's, assessment, claimant's fallback argument that the ALJ substituted his own opinion for that of Dr. Shea is irrelevant, and in any event, rests on a strained reading of the record. It is clear that claimant suffered no prejudice from the format of Dr. Shea's report. Second, claimant argues that the ALJ did not properly evaluate her subjective complaints of pain. On our own review, we agree with the district court that the ALJ gave full and careful consideration to claimant's pain complaints in conformity with the regulations and case law. See Avery v. Secretary of HHS, 797 F.2d 19, 21 (1st Cir. ___ _____ _________________ 1986). The record does not support the contention that the ALJ gave undue weight to claimant's use of non-prescription pain medications. We defer to the ALJ's assessment of claimant's credibility, especially as it was supported by specific findings. See Frustaglia v. Secretary of HHS, 829 ___ __________ _________ ___ F.2d 192, 195 (1st Cir. 1987). Third, claimant argues, for the first time on appeal, that there was insufficient evidence because the VE "mischaracterized," as exertionally sedentary, the various jobs he identified as available to a person with claimant's characteristics. The VE testified that "some" jobs in the following categories would be suitable: machine operation -6- jobs, such as grinding, buffing and polishing; manual assembler; inspector; and cashier/ticket seller. In her appellate brief, claimant assigns code numbers to these job titles based on information in the Dictionary of Occupational Titles (revised 4th ed. 1991) (DOT). All of the code numbers which claimant assigns correspond to jobs which the DOT classifies as requiring a greater than "sedentary" exertional capacity, and in one instance, a greater skill level than claimant possesses.4 The VE, however, did not assign DOT code numbers in his testimony, only general job titles. While the code numbers affixed by claimant refer to similar job titles, there are numerous DOT listings with superficially similar titles, or work descriptions, some of which are classified as sedentary and unskilled.5 Claimant's point thus cannot be ____________________ 4. The code numbers and corresponding titles assigned by claimant are: sanding machine buffer, D.O.T. 662.685-022; polisher, D.O.T. 705.684-058; polisher and buffer II, D.O.T. 705.684-062; grinder, D.O.T. 555.685-026; grinder II, D.O.T. 603.664-010; assembler, small products, D.O.T. 706-684-022; production assembler, D.O.T. 706-687-010; inspector of plastics and composites, D.O.T. 806.261-046; ticket seller, D.O.T. 211.467-030; cashier II, D.O.T. 211.462-010; cashier I, D.O.T. 211.362.010. 5. For example, the DOT classifies the following jobs as exertionally sedentary, and requiring no more than 0-3 months of vocational preparation: check cashier, D.O.T. 211.462-026; cashier, tube room, 211.482.010; pricer, message and delivery service, 214.467-014; tax clerk, 219.487-010; scheduler, 238.367-034; heel sorter, 788.584-010. Moreover, the Secretary's Medical-Vocational Guidelines, which takes -7- readily verified by simply comparing some DOT listings with the VE's testimony. In other circumstances, the uncertainty generated by claimant's observations might cause concern. While not the only reliable source of job information, the Secretary takes administrative notice of the accuracy of the DOT's generalized job descriptions. See 20 C.F.R. 404.1566(d), ___ Subpart P, app. 2, 200.00(b). The Secretary bears the burden of proving the existence of jobs in the economy that the claimant can perform. See Goodermote v. Secretary of ___ __________ _____________ HHS, 690 F.2d 5, 7 (1st Cir. 1982). A clear dichotomy ___ between the DOT and the VE's testimony on this point may call into question the sufficiency of the Secretary's evidence. Courts have vacated the Secretary's decisions where the VE's testimony is contradicted in its entirety by the DOT and the only reasonable explanation seems to be that the VE made a mistake. See, e.g., Young v. Secretary of HHS, 957 _________ _____ ________________ F.2d 386, 392 (7th Cir. 1992) (VE's testimony as to characteristics of claimant's former jobs inconsistent with DOT description); Ellison v. Sullivan, 921 F.2d 816, 821-22 _______ ________ ____________________ administrative notice of the numbers of jobs generally available in the economy, reports the existence of a significant range of sedentary work available to a person of claimant's age (36) and skills (unskilled). 20 C.F.R., Subpart P, app. 2, Table No. 1, Rule 201.24. The ALJ properly used the guidelines only as a "frame of reference" here because the claimant cannot perform a full range of sedentary activity. 20 C.F.R., Subpart P, app. 2, 200.00(d); 20 C.F.R. 404.1569. -8- (8th Cir. 1990) (claimant limited to sedentary work, all jobs listed by VE rated as light to heavy); Tom v. Heckler, 779 ___ _______ F.2d 1250, 1255-56, 1257 n.12 (7th Cir. 1985) (claimant limited to sedentary work; all jobs listed by VE rated as light); Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984) _____ _______ (same). In at least one of the cases, Tom, the court treated ___ an irreconcilable conflict as the equivalent of plain error, remanding despite the failure of the claimant to object below. Here, however, not only is the alleged DOT contradiction uncertain, but the circumstances surrounding claimant's failure to object at the hearing suggest that this uncertainty is better explained by hindsight interpretation than by actual error. Claimant was represented at the hearing by an experienced attorney, who evinced no surprise or confusion at the VE's testimony. On the contrary, he complimented the VE on the thoroughness of his presentation. The attorney was keenly aware that a discrepancy between the VE's articulation and the DOT might be used to claimant's advantage, as shown by a specific objection he made minutes before to another VE's opinion in the same case. A copy of the DOT was apparently available in the hearing room, for the transcript shows that the VE directly consulted the DOT at an earlier point in his testimony. Nevertheless, claimant's attorney did not request specific DOT code numbers, nor seek -9- any other information that might shed light on the VE's sources. The first allusion to this allegedly striking VE error appears in a one-sentence paragraph inserted into claimant's motion for reconsideration of the district court's decision. "We have long recognized that social security cases are not strictly adversarial." Evangelista v. Secretary of ___________ ____________ HHS, 826 F.2d 136, 142 (1st Cir. 1987). Here, however, we ___ see no good excuse for the failure to raise this matter sooner, and claimant offers none. In these circumstances, there is no unfairness in applying the "ordinary rule that appellate courts will not consider issues not raised below." Gonzalez-Ayala v. Secretary of HHS, 807 F.2d 255, 256 (1st ______________ _________________ Cir. 1986) (citations omitted); see also Torres v. Secretary ________ ______ _________ of HHS, 870 F.2d 742 (1st Cir. 1989) (claimant's argument ______ that ALJ's hypothetical omitted a crucial fact will not be entertained for first time on appeal where issues were simple, it was not likely that VE failed to consider the omitted fact, and claimant could have posed his own hypothetical); cf. Evangelista, 826 F.2d at 142-43 (where ___ ___________ claimant was able to fairly present his case and the ALJ's decision was based on substantial evidence, appeals court will not remand for presentation by claimant of arguably "new and material evidence" in absence of "good cause" adequate to excuse the failure to offer the evidence sooner). -10- Accordingly, the judgment below is affirmed. ________ -11-